**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF OHIO**

| | |
|---|---|
| ROGER J. DATRES, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>LEND-A-LOAN, LLC,<br><br>Defendant. | **Case No.**<br><br>**JUDGE**<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Roger J. Datres ("Plaintiff") brings this Complaint and the following causes of action against Defendant Lend-A-Loan, LLC ("Defendant") alleging as follows:

## INTRODUCTION

1. This case involves a telemarketing campaign by Defendant who made, or caused to be made, phone calls to residential numbers nationwide to market its services by contacting numbers repeatedly after those numbers were added to the National Do-Not-Call registry ("DNC"), or after requests to be added to Defendant's Internal Do-Not-Call list ("IDNC"), plain violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*. ("TCPA").

2. The recipients of these unlawful calls, which include Plaintiff and the Proposed Class, are entitled to damages under the TCPA, and because telemarketing campaigns make calls *en masse*, the appropriate vehicle for recovery is a class action lawsuit.

3. Plaintiff thus seeks redress on behalf of himself and all others similarly situated who subscribe to a cellular telephone number registered on the National Do-Not-Call Registry or requested to be added to Defendant's Internal Do-Not-Call Registry.

## PARTIES

**Plaintiff Roger Datres**

4. Plaintiff Roger Datres is an individual residing in Auglaize, Ohio.

**Defendant Lend-A-Loan, LLC**

5. Defendant is a Michigan limited liability company with its principal place of business located at 340 E. Big Beaver Road, Suite 400, Troy, Michigan 48083. Defendant can be served via its registered agent, Registered Agents Inc., 6545 Market Avenue N., Suite 100, North Canton, Ohio 44721.

## JURISDICTION AND VENUE

6. This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1331 because Plaintiff's claims arise under the TCPA, 47 U.S.C. § 227, *et seq*.

7. This Court has personal jurisdiction over Defendant Lend-A-Loan because it is registered and systemically and continuously conducts business in Ohio.

8. Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Plaintiff's cause of action occurred in this district.

## TCPA BACKGROUND

9. As the Supreme Court recently explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, 591 U.S. 610, 613 (2020).

10. It has long been the law that a seller of goods or services can be liable for TCPA violations even if the seller does not directly place or initiate the calls. The provision that establishes

a private right of action against an entity that violates the National Do-No-Call Registry restrictions provides that "[a] person who has received more than one telephone call within any twelve (12) month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection" may bring an action for damages and injunctive relief. 47 U.S.C. § 227(c)(5) (emphasis added).

11. As explained by the FCC, the TCPA and its regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CC Docket No. 92-90, Mem. Op. & Order, 10 FCC Rcd. 12391, 12937, ¶ 13.

12. The FCC reiterated this principle in 2005, when it stated that "a company on whose behalf a telephone solicitation is made bears the responsibility for any violation of our telemarketing rules, and calls placed by a third party on behalf of that company are treated as if the company itself placed the call." *See 1995 TCPA Reconsideration Order*; *Request of State Farm Mutual Automobile Insurance Company for Clarification and Declaratory Ruling*, Declaratory Ruling, 20 FCC Rcd. 13664, 13667 ¶ 7 (2005).

13. The FCC reaffirmed this in 2013, when it held that (a) a seller may, under principles of apparent authority, actual authority, and ratification, be liable for violations of § 227(c) by third parties, and (b) a seller may also be liable, under the express terms of § 227(c), for calls placed "on behalf of" the seller. *In re Joint Pet. filed by DISH Network LLC*, Declaratory Ruling, 28 FCC Rcd. 6574 (2013).

14. According to the online robocall tracking service "YouMail," 4.2 billion robocalls were placed in August 2025 alone, at a rate of 133.9 million calls per day. [1]

15. The FCC has received an increased number of complaints about unwanted calls, with over 150,000 complaints in 2020, and over 160,000 complaints in 2021. [2]

16. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC."[3]

17. "The FTC receives more complaints about unwanted calls than other Complaints combined." [4]

## FACTUAL ALLEGATIONS

18. Defendant is a Michigan based mortgage brokerage "that provide[s] specialized home-buying and refinancing service."[5]

19. Defendant makes, or causes to be made, calls to consumers to solicit business for its brokerage services.

20. Upon information and belief, Defendant purchases leads and makes these solicitation calls without any prior consent from consumers or prior business relationships.

21. Upon information and belief, Defendant utilizes numerous phone numbers when making these unsolicited sales calls, making it difficult for recipients of unwanted solicitation calls to effectively block calls from Defendant.

---

[1] *See August 2025 Nationwide Robocall Data*, YouMail: Robocall Index (last visited September 26, 2025), https://robocallindex.com/2025/august.

[2] FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-helpcenter-data.

[3] Tom Wheeler, Cutting off Robocalls (July 22, 2016), statement of FCC chairman.

[4] Staff of the Federal Trade Commission's Bureau of Consumer Protection, In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).

[5] *About Us*, https://lendaloanmortgage.com/about/ (last visited Nov. 7, 2025).

22. Plaintiff is the subscriber and sole user of his 3892[6] number and is financially responsible for phone service of the number.

23. Plaintiff's 3892 number is a residential line located in Ohio where Plaintiff resides.

***Plaintiff Roger J. Datres's Experience***

24. Plaintiff Roger Datres registered his 3892 number with the National Do-Not-Call Registry on or around May 24, 2025, and has been registered at all times relevant to this action.

25. On or around July 25, 2025, Defendant made, or caused to be made, a telemarketing call to Plaintiff's 3892 residential number attempting to market its mortgage brokerage services. The call was made by the number (740) 343-6176, a number believed to be registered to Defendant.

26. During the call on or around July 25, 2025, Plaintiff informed Defendant's agent or employee that he was not interested in Defendant's services, that his number was registered on the National Do-Not-Call Registry, and requested that Defendant does not call him again.

27. On July 29, 2025, Defendant made, or caused to be made, three telemarketing calls to Plaintiff's 3892 number.

28. Each of the July 29, 2025, telemarketing calls were made from a different number, (419) 928-7160, (330) 595-1096, and (216) 539-0675, all of which are believed to be registered to Defendant, or Defendant's agents or employees.

29. In each of the July 29, 2025, telemarketing calls to Plaintiff, the callers identified as agents of Defendant and attempted to market Defendant's mortgage brokerage services.

30. On July 30, 2025, Defendant made, or caused to be made, a telemarketing call to Plaintiff's 3892 residential number. The telemarketing call was made by the number (419) 922-8192, a number believed to be registered to Defendant.

---

[6] To protect Plaintiff's privacy, counsel has only included the last four digits of his phone number. Counsel will provide Plaintiff's complete phone number to Defendant upon request.

31. On July 31, 2025, Defendant made, or caused to be made, a telemarketing call to Plaintiff's 3892 residential number. The telemarketing call was made by the number (330) 300-9155, a number believed to be registered to Defendant.

32. On August 1, 2025, Defendant made, or caused to be made, a telemarketing call to Plaintiff's 3892 residential number. The telemarketing call was made by the number (440) 600-9021, a number believed to be registered to Defendant.

33. On October 6, 2025, Defendant made, or caused to be made, a telemarketing call to Plaintiff's 3892 residential number. The telemarketing call was made by the number (513) 342-2191, a number believed to be registered to Defendant.

34. On October 13, 2025, Defendant made, or caused to be made, a telemarketing call to Plaintiff's 3892 residential number. The telemarketing call was made by the number (740) 921-0722, a number believed to be registered to Defendant.

35. On October 13, 2025, Defendant sent, or caused to be sent, an unsolicited telemarketing text message to Plaintiff attempting to solicit Plaintiff's business.

36. On October 16, 2025, Defendant made, or caused to be made, two telemarketing calls to Plaintiff's 3892 residential number. The telemarketing calls were made by the numbers (220) 529-1690 and (326) 210-0505, both numbers believed to be registered to Defendant.

37. On October 29, 2025, Defendant made, or caused to be made, a telemarketing call to Plaintiff's 3892 residential number. The telemarketing call was made by the number (283) 202-4081, a number believed to be registered to Defendant.

38. Plaintiff does not have any prior existing business relationship with Defendant. Further, Plaintiff has never consented, written or oral, to receiving telemarketing calls from Defendant.

39. Even though Plaintiff's residential number was, and has been at all times relevant, registered on the National Do-Not-Call Registry, Plaintiff continues to receive calls from Defendant or its agent.

40. In total, between July 25, 2025, and October 29, 2025, Plaintiff received at least thirteen unsolicited and unwanted calls or text messages from Defendant attempting to solicit Plaintiff's business. Because each of Defendant's calls were made using a different number, it is likely that there are even more calls that could not be identified.

41. Defendant's calls were transmitted to Plaintiff's residential cellular telephone, and within the timeframe relevant to this action.

42. The calls were made to market Defendant's services and to solicit Plaintiff's business.

43. Defendant made, or caused to be made, the subject phone calls to Plaintiff's residential number in this judicial district and, therefore, Defendant's violation of the TCPA occurred within this jurisdiction.

44. Upon information and belief, Defendant caused other telemarketing phone calls to be made to individuals from this judicial jurisdiction.

45. Defendant's phone calls were not made for an emergency purpose or to collect on a debt pursuant to 47 U.S.C. § 227(b)(1)(B).

46. At no point during the relevant time period did Plaintiff and Defendant have a prior existing business relationship permitting Defendant to make telemarketing calls to Plaintiff's residential number.

47. At the time Plaintiff received each of these phone calls, Plaintiff never consented to receiving telemarketing calls from Defendant. As a result, Defendant should not have placed any telemarketing calls to Plaintiff.

48. Upon information and belief, Defendant, or someone acting on its behalf, violated Plaintiff's privacy by making each of the above reference unwanted telemarketing phone calls, and they constitute a nuisance as they are annoying and harassing.

49. Upon information and belief, Defendant failed to honor the National Do-Not-Call registrations of individuals' residential lines while conducting telemarketing campaigns.

50. Further, upon information and belief, Defendant failed to honor Internal Do-Not-Call Requests of individuals' while conducting telemarketing campaigns.

## CLASS ALLEGATIONS

**National Do-Not-Call Registry Class ("DNC Class")**

51. Plaintiff brings Count I of this action under Rule 23 of the Federal Rules of Civil Procedure on behalf of a Proposed Class tentatively defined as:

> All natural persons residing in the United States who, within the four years prior to and after the filing of this lawsuit through the date of class certification, were not and had never been a customer of Defendant, and received more than one call regarding Defendant's goods or services within twelve months (either phone call or text message) from or on behalf of Defendant at least thirty days after registering their telephone number with the National Do-Not-Call Registry.

**Internal Do-Not-Call Registry Class ("IDNC Class")**

52. Plaintiff brings Count II of this action under Rule 23 of the Federal Rules of Civil Procedure on behalf of a Proposed Class tentatively defined as:

> All natural persons residing in the United States who, within the four years prior to and after the filing of this lawsuit through the date of class certification, were not and had never been a customer of Defendant, and received two or more calls regarding Defendant's goods or services within any 12-month period from or on behalf of Defendant after communicating to Defendant that they did not wish to receive calls.

**The Action Meets the Requirements to be Certified as a Class**

53. Plaintiff Datres is a member of the DNC Class and IDNC Class.

54. The Proposed Classes can be identified through telephone records and databases used in transmitting the telemarketing calls.

55. **Numerosity.** The exact size of the class is information within the exclusive knowledge of Defendant. However, the number of Putative Class Members is believed to be in the hundreds or thousands, rendering the classes so numerous that individual joinder of all Class Members is impracticable.

56. **Commonality.** There are questions of law and fact common to Plaintiff and to the Proposed Classes under the TCPA, including, but not limited to, the following:

a. As to the DNC Class:

i. Whether Defendant initiated, or caused to be initiated, telephone sales calls to Plaintiff and the Class Members;

ii. Whether Defendant placed solicitation calls to individuals who registered their telephone numbers on the National Do-Not-Call Registry more than 30 days prior;

iii. Whether Defendant implemented the requisite training of personnel under 47 C.F.R. § 64.1200;

iv. Whether Defendant willfully or knowingly violated the TCPA by failing to honor the National Do-Not-Call registry; and

v. Whether Defendant is liable for damages, and the amount of such damages.

b. As to the IDNC Class:

i. Whether Defendant initiated, or caused to be initiated, telephone sales calls to Plaintiff and the Class Members;

ii. Whether Defendant continued to initiate telephone solicitations after opt-out requests;

iii. Whether Defendant failed to honor Plaintiffs' and Class Members' opt-out requests;

iv. Whether Defendant willfully or knowingly violated the TCPA by failing to honor Plaintiffs' and Class Members' opt-out requests; and

v. Whether Defendant is liable for damages, and the amount of such damages.

57. **Typicality.** Fed. R. Civ. P. 23(a)(3). Plaintiff's claims are typical of the claims of the proposed Putative Class Members. In addition, Plaintiff is entitled to relief under the same causes of action and upon the same facts as the other Members of the Proposed Classes.

58. **Adequacy.** Fed. R. Civ. P. 23(a)(4). Plaintiff is an adequate representative of the Proposed Putative Class because his interests coincide with, and are not antagonistic to, the interests of the Members of the Proposed Putative Classes he seeks to represent; he has retained counsel competent and experienced in such litigation; and he intends to prosecute this action vigorously. Plaintiff and his Counsel will fairly and adequately protect the interests of Members of the Proposed Putative Classes.

59. **Superiority.** Fed. R. Civ. P. 23(b)(3). Questions of law and fact common to the Members of the Proposed Putative Class predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. Liability will be determined based on a common set of facts and legal theories. Willfulness will be determined based on Defendant's conduct and knowledge, not upon the effect of Defendant's conduct on the Putative Class Members.

60. The statutory damages sought by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for the Members of the Putative Class to individually redress effectively the wrongs done to them, as the TCPA has no attorney's fee shifting

provision. Even if the Members of the Proposed Putative Class themselves could afford such individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Defendant's conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in just one case.

61. Class certification is appropriate because Defendant has acted on grounds generally applicable to the proposed Putative Classes, making appropriate equitable injunctive relief with respect to Plaintiff and the proposed Putative Class Members. Fed. R. Civ. P. 23(b)(2).

62. **Injunctive and Declaratory Relief Appropriate.** Defendant has acted on grounds generally applicable to the Putative Classes, thereby making final injunctive relief and corresponding declaratory relief with respect to the Putative Classes appropriate on a class wide basis. Moreover, on information and belief, and based on his experience, Plaintiff alleges that the calls made by Defendant and/or their affiliates, agents, and/or other persons or entities acting on Defendant's behalf that are complained of herein are substantially likely to continue in the future if an injunction is not entered.

## CAUSE OF ACTION

### COUNT I
### Violations of 47 U.S.C. § 227(c), and 47 C.F.R. § 64.1200(c)
### (On Behalf of Plaintiff and the National Do-Not-Call Class)

63. Plaintiff re-alleges incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

64. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides in pertinent part that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone

subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

65. 47 C.F.R. § 64.1200(c) is "applicable to any persons or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."

66. Under the TCPA, a person who has received more than one telephone call within any 12-month period by or on behalf of the same entity may bring a private cause of action against such entity based on a violation of the TCPA.

67. Plaintiff and the Class each registered on the National Do-Not-Call Registry more than 30 days prior to receiving such calls.

68. Plaintiff and the Class received more than one such call in a twelve-month period from Defendant.

69. Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff and the National Do-Not-Call Registry Class received more than one call in a 12-month period from Defendant in violation of 47 C.F.R. § 64.1200.

70. Pursuant to 47 U.S.C. § 227(c)(5), Plaintiff and each the Class is entitled to recover from Defendant $500.00 in statutory damages for each such violation. In the event that Defendant are found to have knowingly or willfully violated the TCPA, this Court may, in its discretion, increase the amount of statutory damages to not more than $1,500.00 for each such violation with Plaintiff and each Class Member.

71. In addition, the TCPA allows the Court to enjoin Defendant's violations of the TCPA's regulations prohibiting calls to phone numbers registered on the National Do-Not-Call Registry. *See* 47 U.S.C. § 227(c)(5)(A).

**COUNT II**
**Violations of 47 U.S.C. § 227(c), and 47 C.F.R. § 64.1200(d)**
**(On Behalf of Plaintiff and the IDNC Class)**

72. Plaintiff re-alleges and incorporates by reference the foregoing allegations set forth in paragraphs 1 through 62 as if fully set forth herein.

73. In pertinent part, 47 C.F.R. § 64.1200(d) provides:

> No person or entity shall initiate . . . any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf o that person or entity. The procedures instituted must meet the following minimum standards:
>
> (1) Written policy. Persons or entities making . . . calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
>
> (2) Training of personnel. Personnel . . . engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
>
> (3) Recording, disclosure of do-not-call requests. If a person or entity making . . . any call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making such calls (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed 30 days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the call is made, the person or entity on whose behalf the call is made will be liable for any failures to honor the do-not-call request. A person or entity making . . . any call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a call is made or an affiliated entity.

74. Plaintiff and the IDNC Proposed Class each asked Defendant to stop making telemarketing calls to them.

75. Defendant continued to make telemarketing calls to Plaintiffs and the IDNC Proposed Class after they were, or should have been, listed on Defendant's Internal Do-Not-Call List, in violation of 47 CFR § 64.1200(D)(3).

76. Plaintiff and the IDNC Proposed Class received one or more calls 30 days after requesting to be added to Defendant's Internal Do-Not-Call List.

77. Pursuant to 47 U.S.C. § 227(c)(5), Plaintiff and each IDNC Proposed Class Member is entitled to recover from Defendant $500.00 in statutory damages for each such violation.

78. In the event that Defendant is found to have knowingly or willfully violated the TCPA, this Court may, in its discretion, treble the statutory damages to not more than $1,500.00 for each such violation with Plaintiff and each IDNC Proposed Class Member.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and as a representative of all other persons similarly situated, prays for judgment against Defendant, awarding relief as follows:

a. Certifying the proposed Class List Class under Fed. R. Civ. P. 23 and appointing Plaintiff and his counsel to represent the Class;

b. Statutory damages as provided for under 47 U.S.C. § 227(c)(5), trebled as may be appropriate;

c. A permanent injunction restraining Defendants from making, or having made on their behalf, any additional non-emergency calls to residential lines that are on the National Do-Not-Call Registry without first obtaining the prior express written consent of the called party;

d. A permanent injunction restraining Defendants from making, or having made on their behalf, any additional non-emergency calls to residential lines of people who have previously requested to be added to Defendant's Internal Do-Not-Call list;

e. Pre-judgment interest from the date of filing this suit;

f. A reasonable attorney's fee to be paid out of any common fund created by virtue of this litigation;

g. All costs of this proceeding; and

h. All general, special, and equitable relief to which Plaintiff and the respective Members of the Class are entitled to by law.

DATED: November 7, 2025

*/s/ Kevin M. Cox*

Joseph M. Lyon (0076050)
Kevin M. Cox (0099584
**THE LYON FIRM**
2754 Erie Avenue
Cincinnati, OH 45208
Telephone: (513) 381-2333
jlyon@thelyonfirm.com
kcox@thelyonfirm.com

Matthew R. Wilson (0072925)
**MEYER WILSON WERNING CO., LPA**
305 W. Nationwide Blvd.
Columbus, OH 43215
Telephone: (614) 224-6000
Facsimile: (614) 224-6066
Email: mwilson@meyerwilson.com

*Attorneys for Plaintiff and the Proposed Class*